UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 24 CR 55 |
| v. | ) | |
| | ) | Hon. Sara L. Ellis |
| JAVON STINGLEY | ) | District Judge |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Carjackings are among the most personal and terrifying crimes committed in this District. The victims are unexpecting and innocent, and the perpetrators invade their private vehicles typically with guns and threats. Any carjacking is a serious offense. Defendant's crime in this case illustrates the specific danger carjackings pose and the trauma they inflict upon their victims. On February 19, 2023, Victim B, an off duty Cook County Sherriff's Officer was pumping gas while his wife and two young children waited in his car. Defendant and his co-defendant's punctured this mundane family moment. They accosted Victim B, pointing guns at him and making threats. They took his legal firearm, narrowly avoiding a shootout that likely would have been deadly. Victim B's children fled his vehicle in fear. The carjackers then started to get in Victim B's car to flee, before deciding not to take the car, but stealing Victim B's phone and gun. This crime was heinous and violent. The trauma he inflicted on his victims will take years to repair.

The government does not dispute that defendant is less culpable than his co-defendants, who have worse criminal histories and committed many more carjackings than defendant. But this was not defendant's first gun conviction, and a recent arrest

1

while defendant was a fugitive in this case indicates that this was not a one-time mistake. Defendant, unlike his co-defendants, also avoided a 7-year consecutive mandatory minimum because his crime, although violent, was an attempted carjacking. Defendant's conduct shows a violent escalation in criminal behavior and requires a meaningful sentence to ensure he never does this again. No sentence will repair the pain defendant has inflicted upon his victims, but a sentence of 84 months, toward the top of the Guidelines range, is warranted

## I.    BACKGROUND

On January 31, 2024, defendant was charged in an indictment with attempted carjacking and conspiracy to commit carjacking, in violation of Title 18, United States Code, Sections 2119 and 371. Dkt. 1. On December 1, 2025, defendant pled guilty to the attempted carjacking count. Dkt. 150, 151. Defendant is scheduled to be sentenced by this Court on April 1, 2025. Dkt. 150.

## II.    ADVISORY GUIDELINES CALCULATION

The Probation Office has calculated defendant's pre-acceptance offense level as 29, based upon the carjacking, the use of a gun, and the taking of a firearm. PSR at ¶¶ 16-23. The government agrees with the Probation Office's offense level calculation. The government also agrees with the Probation Office's determination that defendant has a criminal history category of II. PSR ¶ 37. Defendant thus has a final offense level of 26, resulting in a sentencing guideline range of 70 to 87 months' incarceration. PSR ¶ 87.

III. **THE 3553(A) FACTORS WARRANT A SIGNIFICANT SENTENCE NEAR THE TOP OF THE GUIDELINES RANGE**

The Sentencing Guidelines provide an initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Id.* at 46. The Guidelines thus "remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."). The ultimate goals of the Guidelines are "uniformity and proportionality." *Rita v. United States*, 551 U.S. 338, 349 (2007). Put differently, a Guidelines sentence ensures that a defendant does not receive an unfairly high or low sentence simply based on the district in which he is sentenced or the judge who sentences him. In addition to the Guidelines, the court must consider the factors set forth in 18 U.S.C. § 3553(a).

Here, the Guidelines range fairly reflects defendant's criminal history, the extremely reckless and violent crime he committed, and the need to deter defendant and others from committing similar offenses. A Guidelines sentence is warranted, and given the violence defendant exhibited and the fact that defendant avoided a mandatory minimum despite committing a serious gun crime, a sentence toward the top of the Guidelines range is justified.

## A. The Nature and Circumstances of the Offense

On a Sunday afternoon in February of 2023, defendant and his co-defendants made a plan to commit a violent carjacking in Dolton, a near south suburb of Chicago. They were driving around in a stolen Lincoln Aviator SUV, and they were prepared for crime. They were wearing dark clothes and had face masks. And they each had a loaded gun, some of which had extended magazines. When they saw a silver Dodge Challenger that appealed to them, they decided to take it by force, with guns.

In contrast to defendant, Victim B was not in Dolton to commit crime. Victim B was a Cook County Sherriff's Police Officer. It was the weekend, and he was off duty, enjoying time with his family. He stopped at a gas station in Dolton to pump gas while his two young sons and wife waited in the car. Defendant and his co-defendants interrupted Victim B's Sunday with his family with a violent carjacking that showed complete disregard for human life.

They burst out of the Aviator and immediately pointed guns at Victim B while yelling threats. Victim B was carrying his legal and registered firearm. When he saw the carjackers coming for him, he made an instinctual move to reach for his weapon. One of the carjackers said words to the effect of, "I'll shoot you, don't move," and ran toward Victim B with his gun pointed at Victim B's head. Below is a screenshot of that carjacker pointing his gun at Victim B's head from point blank range:

4



A shootout nearly ensued, but thankfully, Victim B moved his hand away from his gun, and the carjacker took the gun.

Defendant was not a mere bystander. He was an active and aggressive participant in this carjacking. He is noticeably shorter than his co-defendants and is identifiable on the surveillance footage of this carjacking, which the government intends to present at sentencing.[1] As depicted on the surveillance footage, defendant got out of the Lincoln Aviator as the carjacking was starting and immediately pointed his gun at Victim B. When Victim B's hand moved toward his gun, defendant ran up toward Victim B and pointed his gun at him at point blank range, ready to shoot. Below are screenshots first of defendant pointing his gun right after getting out of the Lincoln and then pointing his gun at Victim B from close range:

---

[1] The government will provide a copy of the surveillance video to the Court in advance of the sentencing. Defense counsel has already been provided with a copy.

5





After another carjacker took Victim B's gun, defendant ransacked Victim B's pockets. Defendant and his co-defendant started to get into Victim B's car with guns still drawn. Victim B's children and wife were in the car, just a few feet away. Victim B begged the carjackers to let his kids go before taking the car. Victim B's family then

quickly fled in terror. After a brief discussion, defendant and his fellow carjackers left Victim B's car and instead fled at high speed in the Lincoln Aviator, taking Victim B's gun and cell phone.

Defendant committed a horrible, violent crime. It is a miracle that no one was hurt or killed because of his actions. Victims B, a trained police officer, could have easily pulled his gun and a shootout surely would have resulted. Victim B could have been killed. His young children could have been shot. Any of the many bystanders using the gas station on a busy Sundy afternoon could have been hurt. Defendant's actions showed a callous disregard for human life.

Sadly, the impact of defendant's crimes on his victims will last long after he is sentenced. Any carjacking is uniquely personal—an invasion of someone's private vehicle. But here, defendant carjacked not just an adult but a whole family. Victim B may be able to deal with the trauma from this crime given his profession. But his children, who had guns pointed at them and who witnessed their father nearly get shot from feet away, will carry scars from terrible crime for years.

Defendant's punishment must reflect the grave seriousness of his crimes, the trauma he inflicted upon several innocent people, and the danger he caused. A high-end Guidelines sentence is appropriate given the seriousness of his crime.

### B.    Defendant's History and Characteristics

Defendant is 28 years old and has lived in the Chicago area for his whole life. PSR ¶¶ 50-51. While defendant's father was not involved in his life, his mother and grandparents worked to support him, and he reported a stable childhood with no abuse. PSR ¶¶ 50-51. Defendant has seven children with five different women. PSR

7

¶¶ 52-57. Defendant graduated high school and reported having a few temporary jobs. PSR ¶¶ 79-82. Defendant was shot in 2017. PSR ¶ 65.

Nevertheless, despite being the victim of gun violence and despite having a supportive family, defendant chose to re-inflict the trauma of gun violence on others during this carjacking. Further, while defendant's criminal history is relatively limited, it does show an escalating disregard for the law and willingness to carry guns illegally. In 2016, at the age of 18, defendant was caught with a gun while he had an active warrant. PSR ¶ 33. Two years after pleading guilty in that case, he was convicted of possession of a controlled substance after being arrested with crack cocaine, a digital scale, and marijuana in a vehicle. PSR ¶ 34.

Aside from this criminal history, the evidence in this case and from defendant's eventual arrest suggests his conduct during the February 19 carjacking was not his only involvement in criminal activity in the 2023-2024 time period. First, photographs recovered from co-defendant Michael Banks' phone show defendant posing with his co-defendants shortly before they committed the April 18, 2023, carjacking charged in the indictment. Two of those photographs are below and feature defendant taking the picture while his co-defendants pose with guns in front of another recently carjacked vehicle.

 

While defendant was not a part of the carjacking his co-defendants committed minutes later, his willingness to pose with guns and the same men he committed a violent carjacking with just weeks earlier shows that guns and violence were part of his lifestyle.

Similarly, after defendant was charged in this case in January 2024, law enforcement attempted to arrest him at his residence and informed his family members of his arrest warrant. Defendant was not arrested at that time and never turned himself in. Nine months later, defendant was arrested after running from a recently carjacked vehicle.[2] A gun was found in the car near where defendant was sitting. Defendant provided police with a false name, suggesting that he knew he had

---

[2] The police report for this arrest has been produced to defendant and will be provided to the Court as an exhibit.

9

been federally indicted. While this case is still pending, the facts again show that, at minimum, defendant was still involved with guns, carjacked cars, and flight from police, all despite being under federal indictment for a separate carjacking.

Defendant is a young man, and he has not spent any significant time in jail. These facts are mitigating.  Yet, it is also aggravating that despite a supportive family, defendant turned away from a productive life and toward violent criminal behavior. It is also troubling that even after committing this dangerous carjacking, defendant continued to associate with guns and carjacked vehicles. Simply put, defendant's prior custodial sentences and the arrests of his co-defendants on serious charges did not deter defendant. It is important that the sentence be sufficiently significant to ensure that defendant never commits such a violent crime again.

### C.    The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment and Deterrence

Defendant's crime terrorized innocent people and showed a complete disregard for human life, for societal norms, and for the law. A sentence toward the top of the Guidelines range will appropriately punish him for the harm he has caused, it will provide some measure of justice for those he victimized, and it will deter him from continuing to offend.

General deterrence is also a factor in this case. While the murder rate in Chicago has thankfully declined in recent years, carjackings, many committed by

unrepentant carjackers like defendant, have spiked, doubling from 2018 to 2023.[3] These violent carjackings are committed by a relatively small number of people, but they have a huge impact on the citizens of the Northern District as a whole. These crimes cause significant trauma, and they are uniquely personal. Carjackings like those here not only leave the victims scarred, but they impact the sense of safety and security for all Chicagoans. Robberies scare away businesses and ruin neighborhoods. Minimal sentences simply do not deter those who would commit such dangerous crimes. Only a Guidelines sentence will deter defendant and others like him who would terrorize innocent Chicagoans without remorse.

## IV.   RECOMMENDED CONDITIONS OF SUPERVISED RELEASE

Given the circumstances of the offense and all the factors set forth in Title 18, United States Code, Section 3553(a), the government recommends that the Court impose the maximum period of supervised release of five years.

The mandatory, discretionary, and special conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on pages 16 through 23 of the PSR. The government agrees with the conditions proposed in the PSR and concurs with the probation officer's rationale for these conditions. Specifically, the government agrees that discretionary conditions (1), (4), (6), (8), and special conditions (3) and (13) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting the public from further crimes by the defendant, and assisting the

---

[3] *See* Illinois Policy Institute, *Carjackings More Than Double from 5 Years Ago*, December 5, 2023, *available at* https://www.illinoispolicy.org/carjackings-more-than-double-in-chicago-from-5-years-ago/.

defendant in reintegrating into society upon his release. Providing defendant with adequate educational and job training will help him achieve employment, which will be crucial in helping prevent recidivism. The government further agrees that discretionary conditions (7), (9), (14), (15), (16), (17), (18), and (22), and special conditions (5), (6), (7), (8), and (11) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed.

## V.   CONCLUSION

Defendant committed a violent carjacking that traumatized his victims. For the reasons set forth above, the government respectfully requests that this Court impose a sentence of 84 months.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: _s/ Elie Zenner_
ELIE ZENNER
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 697-4032